UNITED STATES, Appellee

v

LESTER B. COOK, Sergeant, U. S. Army, Appellant

11 USCMA 579, 29 CMR 395

No. 13,826

Decided July 1, 1960

First Lieutenant Vernon C. Maulson argued the cause for Appellant, Accused. With him on the brief was Major Edward Fenig.

First Lieutenant Barry L. Kroll argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel James G. McConaughy and Major John G. Lovrien.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial at Fort Dix, New Jersey, convicted the accused of two specifications alleging disrespect to his superior officer and one charge of willful disobedience of a lawful command, in violation, respectively, of Articles 89 and 90, Uniform Code of Military Justice, 10 USC §§ 889, 890. It sentenced him to a dishonorable discharge, total forfeitures, reduction to the lowest enlisted grade, and confinement at hard labor for three years. A board of review reduced the findings of willful disobedience to failure to obey a lawful order, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892, and modified the sentence within the legal limits of the reduced findings. We granted further review to consider the accused's allegation that the law officer committed prejudicial error by refusing to give a requested instruction on mental deficiency as a mitigating circumstance in assessment of the sentence.

The accused has had nearly two decades of service, including combat in World War II and Korea. Among other awards, he twice received the Silver Star for gallantry in action—the first for an engagement near Venafro, Italy, in November 1943; the second for an assault against the Chinese forces in Korea. About a year and a half before the present offenses, the accused was injured in a night parachute jump. Shortly therafter he was hit on the head. About that time, the accused's wife began to notice a change in his conduct. He seemed to be "extremely nervous"; he had nightmares from which he would awaken in a "cold sweat"; and he began to experience "black-outs." In September or October 1958, the accused was hospitalized in the neuropsychiatric ward for about three weeks. About the same period, the accused's conduct involved him with the military courts. In just over a year's time, he was tried on three separate occasions for varying offenses, including one of disrespect to a commissioned officer.

Accused's mental competency was made an issue at the trial. To rebut the defense showing of traumatic injuries and peculiarities of conduct, the Government called a military psychiatrist who had examined the accused on two occasions and who had reviewed his case history, which included examination by three other psychiatrists and psychological testing. The doctor found no evidence of disease or derangement, and in his opinion the accused knew the difference between right and wrong and could adhere to the right. The court-martial decided the sanity question against the accused, and found him guilty of the offenses enumerated above.

Before the law officer instructed the court members in regard to the sentence, defense counsel asked for an out-of-court hearing. The request was granted. At the hearing, defense counsel asked whether the law officer intended to give an instruction to the effect that while the evidence of the accused's mental responsibility was "not sufficient to excuse from the offense itself, it is a thing that should be taken into consideration in mitigation in sentencing." The law officer said he did not. He explained his decision as follows: The court-martial did not find even partial mental responsibility on the part of the accused; if it had, it would have found, under the instructions given before findings, that the accused "didn't have the specific intent required" for some of the offenses found. Apart from advice on the use of a sentence work sheet and the mechanics of voting, the law officer's instructions in regard to the sentence consisted principally of a statement on the maximum punishment for the offenses found. The question before us is whether his refusal to grant the defense request was error prejudicial to the accused.

Recently we held that the law officer has considerable discretion in delineating the matters which the court-martial may consider in its deliberations on the sentence. United States v Rake, 11 USCMA 159, 28 CMR 383. However, it seems to be overlooked at the trial level that the sentence practice, while substantially like the practice before findings, is not, and should not be, as circumscribed as the latter. See United States v Olson, 7 USCMA 242, 22 CMR 32; United States v Strand, 6 USCMA 297, 20 CMR 13. The feeling of caution that before findings tends to narrow the law officer's disposition to exercise his discretion ought not to have the same restraining effect during the sentence procedure, especially if there is a legitimate request by one party and no objection by the other.

The Manual for Courts-Martial, United States, 1951, points out that when an issue of sanity is raised, and the court determines the accused to be sane, it may nonetheless "consider any evidence with respect to the mental condition of the accused which falls short of creating a reasonable doubt as to his sanity." Paragraph 123. Since there was substantial evidence on the issue, defense counsel was justified in calling the matter to the law officer's attention. In fact, in the context of trial counsel's argument his action was fundamental to the defense plea for leniency. The prosecutor had contended, in his argument on the sentence, that the courts-martial which had tried the accused for his previous offenses "undoubtedly" considered the accused's prior record, and on the basis thereof imposed "relatively small sentence[s]" which did not include confinement and which did not reduce the accused to a grade below that of E–5 (Sergeant). "Now once again," trial counsel argued, "the accused has asked you to consider his previous service and to permit him to remain in the Army."[1] The only apparently "new circumstance" was the evidence of the accused's mental condition. As a result, it is arguable that defense counsel's inquiry related to so fundamental an issue that the law officer's failure to include an appropriate instruction constituted an abuse of discretion. However, we need not reach that question. The record of trial shows that the law officer never exercised his discretion. He gave no instruction because he misunderstood or was confused as to the applicable law. Contrary to the Manual provision, he obviously believed that evidence of the accused's mental condition was not a mitigating circumstance because the court-martial had, by its findings, indicated he was not suffering from a condition which totally or partially absolved him from legal responsibility for his acts. Had he known the true rule of law, the law

---

[1] The record does not show whether evidence of the accused's heroism and good conduct had been presented to the earlier courts-martial. For our purposes, we assume the validity of the argument. Cf. United States v Olson, 7 USCMA 242, 246, 22 CMR 32.

officer might well have granted the implied request of defense counsel. As it is, his misconception of the law deprived the accused of the benefit of an informed ruling on an important point. Speaking of a substantially similar situation in connection with a ruling on evidence obtained from a search, we said:

> "In our opinion, a conviction should not rest upon uncertainty and confusion concerning the correct principles of law applicable to a vital part of the case." [United States v Berry, 6 USCMA 609, 614, 20 CMR 325.]

The decision of the board of review as to the sentence is reversed, and the sentence is set aside. A rehearing on the sentence may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

It is conceded that this accused had seventeen years of outstanding service prior to April 14, 1958. However, on that date he was convicted of and sentenced for being drunk and disorderly and since then and prior to the instant case he has twice been punished for military offenses which disclose an adamant refusal to submit to the norms of the military society. Accordingly, these particular crimes make a total of six in a series of criminal delicts which show clearly that accused has slipped to a level where his value to the services has been seriously impaired. Unfortunately for him, the excessive use of alcoholic beverages has tarnished his previously good record and, while he is entitled to commendations for his bravery and good service, the findings and sentence approved by the board of review should be affirmed absent some denial of a substantial right.

For the purpose of this case, I am willing to assume that some form of mental disturbance was raised by the testimony. However, that condition and voluntary intoxication as defenses to the crimes or as they might reduce the degree of the offenses, were submitted to the court by appropriate instructions and the issues were resolved against the accused. Therefore, prior to sentence the only question before the law officer was whether he was required to inform the court-martial members that they might consider "partial mental responsibility" in extenuation and mitigation of the punishment. There was no request as such for an instruction on that matter and no objection was registered to the instructions given by the law officer. As I read the record, there was only an inquiry and a response thereto by the law officer in an out-of-court hearing, which apparently satisfied defense counsel that the matter should be pursued no further. This is the record of the colloquy in the out-of-court conference:

> "DEFENSE COUNSEL: Are you going to give an instruction on the fact that there can be a mitigation in terms of partial insanity and so forth?
>
> "LAW OFFICER: I am not sure I understand just what you mean?
>
> "DEFENSE COUNSEL: Sometimes, as I understand it, if a court finds a person to suffer from partial mental responsibility, even though it is not sufficient to excuse from the offense itself, it is a thing that should be taken into consideration in mitigation in sentencing.
>
> "LAW OFFICER: Well, of course, if I don't see that there has been any finding of that kind—
>
> "DEFENSE COUNSEL: I don't know how one knows if there was or not because the findings are either guilty or not guilty, and if there is a finding of guilty they don't explain the basis on which they found him guilty.
>
> "LAW OFFICER: Except on the basis on the instruction that if they had found partial mental responsibility they would be required to find that he didn't have the specific intent required in Specification 3 of Charge II and the Specifications of Charge I. There has been evidence submitted as to partial mental responsibility but in making their findings it would appear to me that the court did not

so find that that existed, and it is not my intention to specifically instruct on sentence in that regard."

Nothing further was said on that subject and when court reconvened, the law officer gave his charge to the court-martial on the sentence. The record shows that defense counsel noted he desired no further instructions and had no objection to those given.

Without belaboring the proposition that counsel should have made a request or objected to the failure of the law officer to cover the subject, I will assume the point was reserved for appeal. Taking that view of the record, the law officer was faced squarely with the proposition of whether he must instruct the court-martial members that they might consider a factual issue which they had already concluded had no merit. He elected not to do so, and my brothers reason from that fact that he never exercised his discretion. That conclusion has its foundation in sand, but obviously the majority must reach it in order to take this case out from under the rule that singling out particular evidence and emphasizing it for extenuating purposes is discretionary with a law officer. Here, as I view the record, the law officer was following the last-mentioned principle for he advised counsel for the accused that he was not inclined particularly to mention accused's partial mental responsibility as a mitigating factor because the court-martial had found that no such condition existed. The law officer, out of an abundance of caution, could have done otherwise, but he concluded the court-martial had found there was no mental impairment, and the point I desire to make is that he was not required to instruct the court to reconsider the same issue on sentence. A similar situation would have been presented had the defense asked that he isolate intoxication as an extenuating circumstance and instruct the court that it could be considered as a mitigating factor. And by way of further illustration, if entrapment became an issue which was resolved against the accused, defense counsel could request the law officer to inform the court that it could consider entrapment in extenuation.

Requests of that kind could be made on every favorable fact or circumstance. However, if, as the law has been, the giving or not giving of a specific instruction on one extenuating factor when there is evidence to support it is discretionary, *a fortiori* the refusal to submit an instruction when the law officer knows the court-martial has found there is insufficient evidence to raise a doubt about the presence of a factor is well within the limits of a law officer's discretion.

Moreover, in that connection I am puzzled by the statement that this law officer failed to exercise his discretion because he misunderstood or was confused about the law. If he erred as a matter of law, he was not operating in a discretionary field. Conversely, if he ruled in an area where he had alternative courses to pursue, he did not fail to exercise his discretion because he followed a path not foreclosed by law although unfavorable to the accused. Here, the law permitted him the choice between giving an instruction which was legally unnecessary or remaining silent on the subject. He chose the latter and while he said nothing about the law permitting or precluding him from instructing on the subject, I know of no reason for suspecting that he was ignorant of the Manual provision. He was dealing with the facts of a particular case and not in vacuum, and I believe he was on fairly solid ground. It seems incongruous to me to hold that he was confused or misunderstood the law merely because he rejected a request to revive an issue which had been settled. That is not what the Manual requires, for it speaks of evidence which falls short of exculpating but, not only did this court-martial pass on the issue of insanity, it made a specific finding on evidence which fell short of proving that issue and it reached the conclusion that accused's mental condition was unimpaired even for reductive purposes. Moreover, the Manual does not require the giving of any instruction on extenuating circumstances, be they mental, moral or physical. Finally, on this aspect of the case if, as my brothers seem to suggest, the law officer may have been confused

**583**

because he refused the invitation to instruct when he could have ruled otherwise, then there is apt to be considerable confusion in other cases, for the law officer was merely following a principle announced by us. If he cannot do that without being charged with lack of discrimination, then every bit of testimony favorable to an accused must become the subject of a specialized instruction on sentence if a request is made.

In United States v Rake, 11 USCMA 159, 29 CMR 383, decided this term, we stated:

"So far as instruction on the sentence is concerned, the basic requirement is that the court-martial be properly advised of the legal limitations of punishment. That is not all. Since the court-martial is not bound, except in certain cases, to adjudge a maximum sentence, it is appropriate for the law officer to provide 'general guides governing the matters to be considered in determining the appropriateness of the particular sentence.' United States v Mamaluy, 10 USCMA 102, 106, 27 CMR 176. However, he is not required to detail each and every matter that the court-martial might possibly consider in mitigation. As we pointed out in United States v Harris, 6 USCMA 736, 21 CMR 58, in connection with a recital of the evidence before findings, 'the emphasizing of particular facts by special instructions will often mislead a jury as to their relative importance.' The matter is one which rests in the sound discretion of the law officer."

The principle announced there should be controlling in this instance. The evidence was before the court-martial, all the facts in extenuation and mitigation were forcefully argued by both counsel, and the court members were unshackled and unrestricted in their consideration of all the evidence introduced on both findings and sentence. Accordingly, I find no legal basis for reversing a perfectly valid sentence.

I would affirm the decision of the board of review.