UNITED STATES, Appellee

v

NORMAN H. HUTTON, Airman First Class,
U. S. Air Force, Appellant

14 USCMA 366, 34 CMR 146

No. 17,017

January 24, 1964

*Major Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E Henderson, Jr.*

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Tried by a special court-martial convened at Itazuke Air Force Base, Japan, the accused pleaded guilty to charges of failure to repair to his appointed place of duty and being drunk in uniform in a public place, in violation, respectively, of Uniform Code of Military Justice, Articles 86 and 134, 10 USC §§ 886, 934. Found guilty, he was sentenced to bad-conduct discharge, confinement at hard labor for four months, and reduction to airman basic. Intermediate appellate authorities affirmed, and we granted accused's petition for review, specifying the following issues:

"1. Whether the same instructions on maximum sentence at the time of plea (R. 6), prior to receipt of evidence of previous convictions (R. 19, Ex. 1), and on the sentence (R. 25) were prejudicial.

"2. Whether the accused was prejudiced by trial counsel arguing on the sentence (R. 24):

'The witnesses may have testified that his work was acceptable, however, apparently he was relieved of that work to become a squadron orderly, for some reason. This does not show, at any rate, that his superiors felt that continuing his job as he was doing, was an advisable thing, even though the sergeant who came in seemed to feel he was adequate at performing it.'"

### I

At the time of entering his pleas of guilty, accused was fully advised by the president of their meaning and effect. Among other things, he informed Hutton that, if he were found guilty, he might be "sentenced by the court to the maximum punishment authorized which is a bad conduct discharge, reduction to airman basic, confinement at hard labor for four months and forfeiture of two-thirds of your pay for four months." Thereafter, in accordance with Air Force practice, the prosecution adduced evidence to establish accused's guilt of the offenses charged. In doing so, it established Hutton was then assigned to duty as squadron orderly and, on the date alleged, failed to repair at the appointed place and time for the performance of such duty. As orderly, accused was required "to clean the squadron dayroom and police up the area and cut grass, as necessary."

Following announcement of the findings of guilty, it was shown Hutton had approximately fourteen years' prior service in the Army and Air Force. Numerous enlisted fitness reports were received on his behalf, which, with one exception, established creditable service as a noncommissioned officer, with

ranks as high as Staff Sergeant. The excepted report, however, noted delinquencies on his part; that he had been relieved from duty in the Wing Operations Center; that he "has the ability but . . . is either unable or unwilling to perform as a NCO"; that on one occasion, he was "under the influence of alchol [sic] or some other intoxicant"; and recommended against his promotion.

Defense counsel also called witnesses who testified to accused's prior performance of duty. Sergeant Spicer, his immediate superior, declared he did a "highly fashionable job" as "assistant flight supervisor in the Base Communications Center" from September 1, 1962, until December 15, 1962. Staff Sergeant Hilbert testified that accused, during February 1963, served satisfactorily as the shift operator in the Communications Center and that he was now "capable of performing in his job specialty as an airman first class [accused's grade at time of trial]." In addition, counsel made an unsworn statement on accused's behalf, in which he attributed the commission of the offenses to domestic difficulties and pointed out that both the public drunkenness and failure to repair occurred after "he awoke early in the morning, on the morning of 18 March and started drinking with his wife." He also stressed that "Airman Hutton really did not have a job to perform. He was put in a position of Squadron Orderly during an interim period simply to give him something to do. As the sergeant indicated, . . . all Airman Hutton was doing was general clean-up man around the barracks and mowing the grass during that time."

Evidence of two previous convictions was introduced by the trial counsel. Each was by summary court-martial. The first involved willful disobedience of a lawful order on July 17, 1962. The last was for a three-day absence without leave during January 1963. It resulted in accused's reduction to Airman First Class.

In his final argument on the sentence, trial counsel declared:

"The offense in evidence here before you fits a certain pattern which is established by the previous convictions, which are present before you in the DD Form 493. The first one was for a failure to go; so was this. Also, there was a violation of a lawful order. Another one, the second conviction, was for absence without leave; such offenses take the person away from his duty during the period of time when he is absent. The performance reports placed before you show not discreditable service but certainly not outstanding service. The witnesses may have testified that his work was acceptable, however, apparently he was relieved of that work to become a squadron orderly, for some reason. This does not show, at any rate, that his superiors felt that continuing his job as he was doing, was an advisable thing, even though the sergeant who came in seemed to feel he was adequate at performing it.

"Therefore, I urge you gentlemen, in considering this sentence, to consider the pattern of this man's behavior, what it has led up to, and whether in fact this man has any more useful service to render the Air Force, and whether in view of his present conduct, he has merited retention. Thank you very much."

The president advised the court-martial at length regarding its duties in connection with adjudging an appropriate penalty. He stated the maximum punishment "is a bad conduct discharge, confinement at hard labor for four months, forfeiture of two-thirds pay per month for four months, and reduction to the lowest enlisted pay grade." At no time did he inform the court of the bearing of the evidence of previous convictions upon that maximum sentence.

II

We consider initially the question posed by the president's twice-stated instruction that accused might be lawfully sentenced to a bad-conduct discharge along with the confinement, forfeitures, and reduction. And we note that the

aggregate penalty for the offenses of which he was found guilty did not extend to the punitive discharge. Table of Maximum Punishments, Manual for Courts-Martial, United States, 1951, paragraph 127c. Technically speaking, at least, the president was in error when he, prior to the receipt of any evidence of previous convictions, informed the accused that he might be sentenced to a bad-conduct discharge, in addition to confinement, forfeitures, and reduction, on the basis of his pleas. But such error was not prejudicial, for the purpose of then advising the accused of the maximum sentence which may be imposed is to insure that he does not enter his pleas in the belief that he cannot receive a punitive discharge and thereafter, without notice, be subjected to this permissible additional punishment upon proof of the necessary predicate therefor. United States v Zemartis, 10 USCMA 353, 27 CMR 427; United States v Downing, 11 USCMA 650, 29 CMR 466. A correct instruction would have advised the accused that he might additionally be sentenced to a bad-conduct discharge *if* evidence of two or more previous convictions were received. Manual, supra, Appendix 8a. Omission of the limiting phraseology could not, however, under the circumstances of this case, have misled Hutton. We turn, therefore, to the president's final advice to the court on the maximum sentence.

As appellate defense counsel argue, the president stated that the maximum punishment which accused might receive included a bad-conduct discharge, the stated term of confinement and forfeitures, and reduction. At no time were the court members informed that the offenses to which accused pleaded guilty did not permit imposition of a punitive discharge, Manual, supra, paragraph 127c, but that this serious penalty was permitted only on the basis of the evidence of two previous convictions.

The Government in rebuttal to the defense, argues that, under our decision in United States v Turner, 9 USCMA 124, 25 CMR 386, the only duty lying upon the president was to instruct the sentencing body as to the aggregate maximum sentence which might be imposed. We do not agree that *Turner,* supra, so holds.

In that case, the Court was concerned with the need for guidance to court members regarding the maximum imposable sentence in light of the fact that we had earlier prohibited their use of the Manual, supra, as a legal reference book during the trial. See United States v Rinehart, 8 USCMA 402, 24 CMR 212. Pointing out that the Manual did not go beyond providing the law officer "*may* advise the court of the maximum punishment which may be imposed," (emphasis supplied) Manual, supra, Appendix 8a, we said, at page 129:

". . . Without regard to the validity these provisions may have enjoyed prior to our decision in United States v Rinehart, 8 USCMA 402, 24 CMR 212, they are invalid now . . . . [and]

". . . in order that there be no misunderstanding as to the future, we now hold that the law officer of a general court-martial and the president of a special court-martial *must* advise the members in open court on the maximum permissible limits of punishment prior to deliberation on the sentence. Only in this manner can we satisfy ourselves that the sentence adjudged by a court has been based upon correct limitations." [Emphasis supplied.]

Beyond this holding, we did not go, satisfying ourselves with settling the issue then before us by laying down a minimal requirement as to sentence instructions. Since *Turner,* supra, was decided, we have pointed out that it is not necessarily sufficient to rely on a bare statement of the maximum sentence. Thus, in United States v Rake, 11 USCMA 159, 28 CMR 383, we declared, while areas of discretion existed, "the law officer's responsibility to provide guidance to the court-martial is no less than his responsibility in regard to the findings" and noted "it is appropriate for the law officer to provide 'general guides governing the matters to be considered in determining the

appropriateness of the particular sentence.' " United States v Rake, supra, at page 160. And in United States v Cook, 11 USCMA 579, 29 CMR 395, we reiterated the need to give the court-martial full instructions on sentence in appropriate situations. In short, as Judge Kilday aptly remarked in United States v Smith, 13 USCMA 471, 33 CMR 3, at page 474:

". . . The darkness of misunderstanding may obscure the import of certain facts but, when they are scrutinized through the spectacles of intelligence, the truth may more easily emerge. In short, justice tends to flourish in an enlightened atmosphere. The requirements of the law foster it, and the intent of this Court has always been to encourage that situation."

So do we here believe the court members should have been furnished the torch of enlightenment concerning the basis for the maximum permissible sentence. The provision for additional punishment after proof of two or more previous convictions does not amount to a habitual criminal statute, but operates to increase the maximum punishment for the offenses of which accused is found guilty. United States v Prescott, 2 USCMA 122, 6 CMR 122; United States v Watkins, 2 USCMA 287, 8 CMR 87. The whole argument of the trial counsel was of the tenor that the previous offenses and those to which accused pleaded guilty at this trial demonstrated a pattern of abuse which put in question "whether in fact this man has any more useful service to render the Air Force, and whether . . . he has merited retention." On the other hand, defense counsel pointed to the accused's long and honorable prior service and the minor nature of his infractions. The whole point of these presentations was directed to the question whether a punitive discharge should be adjudged. In light of these circumstances, the president should have called to the court's attention the fact that the minor offenses of which accused stood convicted normally permitted only the penalties of confinement, forfeitures, and reduction, and that a bad-conduct discharge was authorized solely because of proved recidivism. In the absence of such advice, the court was unlikely to appreciate that Hutton was being punished for offenses for which a punitive discharge was not authorized and fairly to balance the appropriateness of this severe penalty against his excellent prior record. In short, under the peculiar facts of this record, we are of the opinion that the atmosphere of the court's deliberations should have been illuminated by a full explanation of the reason for the increase in punishment, thereby permitting it properly to weigh all factors attending the sentencing process in a correct fashion. United States v Rake, supra; United States v Cook, supra. In light of the extensive evidence in mitigation and extenuation, we are required to hold there is a fair risk that no punitive discharge would have been adjudged had the court been so advised. Reversal is, therefore, required.

III

The second assignment of error deals with trial counsel's argument, summarized above. It is said to be improper on the ground that his comments had no basis in the evidence. United States v King, 12 USCMA 71, 30 CMR 71. The matter does not require lengthy treatment, for we find ample foundation for his remarks in the record. Thus, Sergeant Kimberlin testified accused, a noncommissioned officer, was, on March 18, 1963, assigned to duty as squadron orderly, with duties involving cleaning, policing, and mowing grass. Other witnesses testified to his proficiency as a communications specialist and normal service as such. Defense counsel himself referred to accused's position as squadron orderly as being assigned him during the interim period in order to give him something to do, pending disposition of the case. And one of accused's fitness reports referred in most unflattering terms to his performance of duty and conduct as a noncommissioned officer. All these factors, as well as the two previous

convictions, might well lead one to argue, as did the trial counsel, that accused was relieved of his ordinary duties and that his supervisors did not feel that continuing him in his technical specialty was advisable. The record thus reflects a fair basis for inferring such a conclusion. The assignment, turning as it does upon the facts, is, therefore, overruled. United States v Doctor, 7 USCMA 126, 21 CMR 252; United States v Olson, 7 USCMA 242, 22 CMR 32.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Air Force. The board may affirm a sentence which does not include a bad-conduct discharge, or order a rehearing on the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

On occasion I have, perhaps, gone further than my brothers in favoring elimination of the "darkness of misunderstanding" in the sentence procedure. See my dissents in United States v Kiger, 13 USCMA 522, 33 CMR 54; United States v Cleckley, 8 USCMA 83, 23 CMR 307. Consequently, I share the view that within the limits of the court-martial's sentence power, it is better to tell the court members the basis upon which the maximum sentence is computed. In general, knowledge of the relative seriousness of the offenses found, and the part each offense plays in the determination of the maximum to be considered by the court-martial, can lead to a more appropriate sentence. See United States v Rhodes, 11 USCMA 735, 29 CMR 551; cf. United States v Green, 11 USCMA 478, 29 CMR 294. It may be doubted, however, whether the general rule is helpful to an accused in a case such as this, in which the maximum is based in part upon previous convictions. But, the question of desirability need not detain me. The court-martial here adjudged the maximum sentence. In view of that fact, I don't see how the accused was hurt by the failure to instruct on the separate elements that made up the maximum. See United States v Smith, 12 USCMA 595, 31 CMR 181.

Without the instruction, the court-martial had two choices; with it, it had exactly the same choices. In either case it could consider that, notwithstanding the previous convictions, the circumstances of the offenses and the accused's background justified a sentence less than the maximum; or it could consider that the previous convictions and the other relevant circumstances justified the imposition of a maximum sentence. The court chose discharge and maximum confinement as an appropriate sentence. That choice rendered wholly unimportant the specific means by which these components became part of the maximum sentence. I would affirm the decision of the board of review.