UNITED STATES, Appellee,

v.

· **Private First Class Austin S. STOCK-MAN, SSN 221–50–8726, United States Army, Appellant.**

**CM 442773.**

U.S. Army Court of Military Review.

30 Sept. 1983.

Captain Peter R. Huntsman, JAGC, argued the cause for appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Major Robert C. Rhodes, JAGC, Captain James A. McAtamney, JAGC, and Captain L. Sue Hayn, JAGC.

Captain Gary L. Hoffman, JAGC, argued the cause for appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Thomas E. Booth, JAGC.

Before CLAUSE, COKER and HANFT, Appellate Military Judges.

## OPINION OF THE COURT

COKER, Judge:

The appellant stands convicted in accordance with his pleas of conspiracy to violate and the violation of, a United States Army, Europe, Regulation that prohibits transporting persons without prescribed travel documents on the Helmstadt-Berlin autobahn in a vehicle with United States military registration. He was sentenced to a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances, and reduction to Private E–1.

The convening authority reduced the period of confinement to six months, but otherwise approved the sentence.

The appellant, assigned to duty with the United States Forces in Berlin, engaged in a conspiracy with two German Nationals to smuggle East German citizens into Berlin. Preparations over a two-month period included securing a car, registering it with the United States Forces in the appellant's name, building a hiding place in the car, enlisting the aid of a second United States soldier, identifying the pickup point on the autobahn in East Germany, and developing procedures for the pickup. The appellant and the second soldier were to be paid for this service if they were not caught, although the amount of the payment is in dispute. The appellant has consistently maintained that the money was not an issue in his decision to engage in the venture. At the designated time and place, the appellant and his soldier companion picked up the East Germans, hid them in the car, and proceeded on toward Berlin. They were caught by the Soviet Forces at a Soviet checkpoint and the soldiers turned over to American military authorities. The East Germans had no proper travel documents issued by the United States, the Soviet Union, or either German government. Before this Court, the appellant argues that the regulation in question is contrary to human rights and the Thirteenth Amendment to the United States Constitution and therefore should not be enforced by criminal sanctions. We disagree.

Prevention of war and its multitude of belligerent acts of violence is a major goal of the United States Government. The Berlin blockade and the countering allied airlift of 1948 and 1949 were a most serious threat to that policy. Access to Berlin continued as a cause of serious tensions between the Soviet Union and the United States until the signing on September 3, 1971 of the Quadripartite Agreement on Berlin, 24 U.S.T. 283, T.I.A.S. No. 7551. This treaty, a part of the "supreme Law of the Land," U.S. Constitution, art. VI, cl. 2, established detailed arrangements for the transit of allied goods and persons to and from Berlin. It required implementation by the four powers and included an agreement between the two German governments accepting the rules of transit. The regulation at issue before the Court is designed to insure that the conduct of United States personnel complies with the arrangements specifically made by the United States to eliminate the potential for violent confrontation between the United States and the Soviet Union over access to Berlin. It is therefore a necessary and reasonable implementation by the United States military of an action required by the treaty and in furtherance of national policy. Any change to this regime remains the prerogative of a national policy decision.

The prohibition on United States military personnel of transporting undocumented persons on the Helmstadt-Berlin autobahn is not a violation of human rights or the Thirteenth Amendment. United States Forces in Berlin are an occupying force, but today it is a force of protection, not one of belligerency. The purpose of the United States Forces' presence in Berlin is to protect the freedom of this island of democracy, and not to wage clandestine warfare against the internal laws of other governments. Prevention of confrontation by the two major powers over access to Berlin is the protection of freedom, including human rights, for those persons who say, "Ich bin ein Berliner." While prevention of slavery and involuntary servitude are recognized goals of the community of nations, the prohibitions of the Thirteenth Amendment simply do not apply to acts of individuals or governments outside the territorial jurisdiction of the United States. Further, the Thirteenth Amendment cannot be read as a mandate directing national foreign policy, nor as an exemption for United States citizens from the laws of other nations.

In *Chappell v. Wallace*, ―― U.S. ――, 103 S.Ct. 2362, 2367, 2365, 76 L.Ed.2d 586, 593, 590 (1983), the Supreme Court once again recognized, "The special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted

personnel...." The Court also pointed out that "no military organization can function without strict discipline and regulation", and "The inescapable demands of military discipline and obedience to order cannot be taught on battlefields...." The duty of responsive discipline was breached by the appellant in his disregard of superior orders. Conduct that deliberately violates an order issued to protect the status of Berlin by a soldier assigned to a unit specifically deployed to protect the status of Berlin is not merely "bad", it is dishonorable. The appellant's approved sentence is fully warranted.

The findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE concurs.

HANFT, Judge (dissenting in part):

*Die Mauer* (the Wall) which separates West Berlin from East Berlin and East Germany stands as a stark monument in morbid celebration of one political regime's ability to inflict pain and suffering upon mankind. Stockman's crime consisted of trying to breach the Wall by endeavoring to smuggle an East German family into a free West Berlin. While application of the Rule of Law—a concept so often ignored by the architects of the wall—compels me to join the majority in affirming the conviction in this case, I dissent from that portion of the decision which affirms the Bad Conduct Discharge as a part of the sentence.

In *United States v. Wheeler*, 17 U.S.C.M.A. 274, 276, 38 C.M.A. 72, 74 (1967), Judge Homer Ferguson observed that the imposition of a punitive discharge "has come to be the modern equivalent of the ancient practice of branding felons, and the stain it leaves is as ineradicable". While I cannot condone Stockman's conduct, I do not believe that the particular facts of this case warrant the stigma of a Bad Conduct Discharge.