UNITED STATES, Appellee

v

MICHAEL W. JOHNSON, Private,
U. S. Marine Corps, Appellant

17 USCMA 514, 38 CMR 312

Major L. G. Bohlen, USMC, argued the cause for Appellant, Accused.
Lieutenant H. L. Moore, USNR, argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel C. R. Larouche, USMC, and Lieutenant Charles Freeland, USNR.

## Opinion of the Court

QUINN, Chief Judge:

At his trial before a special court-martial on a charge of larceny, the accused objected to the admission of evidence of discovery of the stolen property in his possession on the ground it was obtained in a search made without probable cause and without authorization of a competent official. The Government contended the search was made with accused's consent. The objection was overruled, and the accused was duly convicted and sentenced. On this appeal he contends the ruling was erroneous.

On Friday morning, March 17, 1967, Corporal William E. Curtin, Jr., discovered his wall locker had been forced open during the night, and two suits and an overcoat had been stolen from him. He reported the theft to appropriate superiors. Later, in an effort to locate his clothing, he "trailed" an inspection party conducting the regular weekly inspection of the barracks, and "glanced through" various open lockers, but he found no trace of his habiliments. After the inspection, as he was returning to his place of duty, a friend, Lance Corporal Dennis R. Whitmire, told him he had been painting with the accused and noticed that he "became very pale and very shaky"

when it was announced over the public address system that personnel of the unit were to stand by their lockers during the inspection. Curtin returned to his barracks, telephoned the office, and requested a staff sergeant. Staff Sergeant Robert M. Miller was directed to "report" to Curtin at the barracks to "be a Staff NCO" or witness.[1] As Miller prepared to drive to the barracks, he was approached by the accused and asked for "a lift" to the cafeteria. The accused had been relieved from his painting duties to go to "early chow." Miller told him he was going just to the barracks and the accused decided to go there. Arriving at the barracks, they separated, with the accused going to a friend's room to return a book.

Curtin met Miller and asked him to go to the accused's room as a "witness to something." When they entered the accused's room, Lance Corporal Whitmire and the accused were present. Curtin asked Miller to "ask" the accused to open his wall locker. Until that time, Curtin had not "discuss[ed] anything" with Miller as to his reason for wanting the accused to open the locker. Miller said to the accused, "how about" opening your locker or "[w]ould you open your wall locker." The accused "shrugged his shoulders." Miller repeated what he had said. The

---

1. The significance of assignment as "Staff NCO" in the circumstances was not explained. On this appeal, appellate defense counsel contend the assignment invested Miller with "color of authority" of command over the accused. Government counsel maintain his function was not to represent command, but to act as "peacekeeper and informal arbitrator" in resolving disputes in the barracks that may require the judgment of "a successful, experienced and trustworthy member of the service." Testimony by the accused, which we note later in the text, tends to indicate he was advised that the presence of a "Staff NCO," pursuant to request, protects from disciplinary action a person who effects an entry into the locker of another.

accused turned around, without saying anything. After a few moments, he asked Curtin to go outside with him to talk. Curtin agreed. They left the accused's room and entered another across the hall. Immediately, the accused told Curtin he had taken the clothing. He expressed regret and asked Curtin to "'just drop the whole thing and forget about it.'" Curtin told him he would have to inform the sergeant major, but he would do what he could. Thereupon, they returned to the accused's room.

According to Miller, he "didn't say anything" when Curtin and the accused reentered the room. Curtin, however, "believe[d]" that Miller again "asked" the accused to open his locker and the accused replied, "O.K." Both witnesses agreed the accused went to his locker, pulled open the lock, and removed the contents, throwing them on his bed. The two stolen suits were among the articles taken from the locker. The accused then "dumped out" his laundry bag on the bed, revealing the stolen overcoat.

Miller testified he did not "order" the accused, either directly or indirectly, to open his locker; he merely presented a "voluntary request." He maintained he had not acted in an investigative capacity, and he implied his authority to give orders, by virtue of his rank and duty assignment, was limited to juniors "within . . . [his] section." Curtin also testified no "order of any nature" was given the accused to open his locker. At one point in his own account of the circumstances of the search, the accused testified to the same effect. Thus, questioned by trial counsel as to whether he had heard Miller's testimony to the effect that he had asked the accused "to voluntarily open" his locker, he acknowledged he had, and he admitted Miller was not "mistaken" and his testimony was "truthful." Specifically asked whether Miller had ordered him to open his locker, he replied, "he didn't order me." Elsewhere in his testimony, however, the accused said he "felt" that Miller's statements were "indirect orders." He testified he

complied with the third order for the following reason:

"A. Because after we came back into the room I asked, I don't remember which one it was it was either Staff Sergeant Miller or Corporal Curtin, what would have happened if I wouldn't have been there and they told me that they would have gotten into it whether I was there or not.

. . . . .

"Q Did they explain how they would have gotten into it?
"A. No, sir, they didn't."

Earlier in his examination, he testified he received an explanation of sorts in response to the question he had asked. He averred Curtin answered his question as follows: "Corporal Curtin said that we would have gotten to it whether you were here or not, because we have a Staff NCO present. I don't know exactly how he stated it, but in so many words in the Marine Corps that's all you need as long as there is a Staff NCO present to get into a locker."

A search of personal effects may be based upon the voluntary consent of the person whose privacy is involved. United States v Rushing, 17 USCMA 298, 38 CMR 96. The burden of establishing consent, by clear and positive testimony, is on the Government. United States v Justice, 13 USCMA 31, 32 CMR 31; United States v Westmore, 14 USCMA 474, 34 CMR 254. Yielding to the apparent authority of one clothed with indicia of Government power is not consent. United States v Wilcher, 4 USCMA 215, 15 CMR 215. The accused contends the evidence demonstrates he opened his locker only because he was ordered to do so. See United States v Westmore, supra.

Miller apparently did not use ordinary terms of command in addressing the accused. A communication, however, may be "phrased in precatory" language, yet it will constitute an order if so understood by the communicant and the person to whom the communication is addressed. United

States v Glaze, 3 USCMA 168, 173, 11 CMR 168. Evidence of the understanding of the parties is, therefore, material to determination of the nature of the communication. United States v Mitchell, 6 USCMA 579, 20 CMR 295.

The testimony of the Government's witnesses left no doubt that Miller did not intend, or understand, ▋ his remarks to constitute an order. Miller testified directly to that effect. Curtin also indicated he understood Miller's remarks as imploratory, not mandatory. The accused's testimony as to his own understanding of Miller's words is contradictory. One part of his testimony attests to the fact that he, too, interpreted Miller's language as a plea, not precept. Another part, however, indicates he regarded the words as expressing an "implied order." The truthfulness of the former over the latter is demonstrated by his actions. Twice he responded to Miller's words with acts of indifference bespeaking a belief that he could disregard Miller with impunity. The point is emphasized by his invitation to Curtin to leave the room with him for a private conversation, as well as by the nature of that conversation. It is further emphasized by his question as to what would have been done had he not been present. This question came after he had satisfied himself that Curtin would not "forget" the matter. The reasonable inference from the sequence of his private confession to Curtin that he was the thief, his ascertainment that Curtin would not "forget" the matter, and his determination that Curtin would have sought other means to inspect his locker if he had not been present, is that he decided the "jig was up," and he might just as well comply, of his own volition, with Miller's request. Considering the evidence as a whole, therefore, the Government clearly satisfied its burden of establishing that the accused consented to the search of his locker and effects. United States v Decker, 16 USCMA 397, 37 CMR 17.

In a second assignment of error, appellate defense counsel contend the instructions on the sentence were prejudicially deficient in that ▋ they were limited to a statement of the maximum penalty and the voting procedure to determine the punishment. We agree. United States v Wheeler, 17 USCMA 274, 38 CMR 72.

The decision of the board of review as to the sentence is reversed. The record of trial is returned to the Judge Advocate General of the Navy for resubmission to the board of review for further consideration of the sentence, in the light of our opinion in United States v Wheeler, supra.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

In my opinion, the record establishes acquiescence in the demand made of accused to open his wall locker and not his freely given consent to search it. Regardless of rationalization at this level, I am certain that, to the average Marine as well as to this accused, a staff sergeant's "request" has sufficient authority and force to be treated as an order and to remove that degree of choice and volition essential to finding a waiver of rights under the Fourth Amendment.

The facts bear this out. Acting on nothing but the most unsupported suspicion, the victim of the alleged theft, Corporal Curtin, called his headquarters and requested a staff sergeant be sent to the barracks. Staff Sergeant Miller was directed to report there and, on his arrival, was asked by Curtin to accompany him to accused's room. And, whether he was there to exercise the authority of command over the accused or, as the Government contends, to act informally in resolving any dispute which might arise, is immaterial. Suffice it to say that, under either construction, he was present as the official command representative and it was his stripes which bore weight in the controversy.

Indeed, this is borne out, for Corporal Curtin did not make the "re-

**517**

quest" to accused to open his wall locker. Instead, he asked Miller to do it for him. Any why? The answer is obvious. Miller's rank, impartially exercised or not, would have the effect of securing obedience, however tardy, from the suspect.

This is precisely what happened. Staff Sergeant Miller asked accused if he would open the locker. When accused did not move to comply, Miller repeated the "request." Accused again did not comply and then asked to speak with Curtin privately. It was only after this discussion and, according to Curtin, a third "request" from Miller, that accused finally gave in and opened the locker. Accused's own phraseology sums up the situation when he termed Miller's repeated injunctions as "indirect orders."

Undoubtedly, a search of one's personal effects based upon freely given consent is lawful and proper. Zap v United States, 328 US 624, 90 L ed 1477, 66 S Ct 1277 (1946); Davis v United States, 328 US 582, 90 L ed 1453, 66 S Ct 1256 (1946); Perlman v United States, 247 US 7, 62 L ed 950, 38 S Ct 417 (1918). But that consent must be obtained without any implication of the use of authority to obtain it. Thus, in Amos v United States, 255 US 313, 65 L ed 654, 41 S Ct 266 (1921), prohibition agents visited the defendant's home and informed his wife they were there to search the premises. There was no evidence of threats or violence on their part but there admission without verbal or other resistance was nevertheless held to be without the necessary consent. The Court declared, at page 317, "it is perfectly clear" the mere statement of the agents' purpose to search constituted "implied coercion."

In like manner, the repeated "requests" of Staff Sergeant Miller that accused open his wall locker bore in on the accused that he had no choice but to comply with what amounted to the demands of his superior noncommissioned officer. Marines and other combat troops are conditioned to obey their superiors, at the pain of suffering the severe penalties set out in the Code, and, in my opinion, accused's reluctant compliance with Miller's "requests" amounted to no more than that Pavlovian response. The presence of the staff sergeant and his repeated requests constituted, as in *Amos*, supra, "implied coercion" and, as in that case, we should here find the search illegal. The Government has the heavy burden of establishing consent by clear and positive testimony. United States v Justice, 13 USCMA 31, 32 CMR 31; United States v Westmore, 14 USCMA 474, 34 CMR 254. Here, it demonstrated only a submission to military authority. I would accordingly conclude accused did not consent to the search of his wall locker and hold the fruits of such examination should properly have been excluded from evidence.

As the only other evidence of the theft is found in a purported statement of the accused to the victim, I would order a rehearing where the question of guilt and innocence might be determined by a court freed of the influence of the inadmissible proof.

I join in that portion of my brothers' opinion which finds a failure by the president of the court to comply with our decision in United States v Wheeler, 17 USCMA 274, 38 CMR 72.

I would reverse the decision of the board of review and order a rehearing.