UNITED STATES

v.

Sergeant Jose J. CRUZ, FR 463–88–9846
392d Communications Squadron Twen-
ty-Second Air Force (MAC).

ACM 22108 (f rev).

U. S. Air Force Court of Military Review.

31 May 1977.

Appellate Counsel for the Accused: Colo-
nel Robert W. Norris and Captain Thomas
S. Markiewicz.

Appellate Counsel for the United States:
Colonel Julius C. Ullerich, Jr., and Major
Alvin E. Schlechter.

Before LeTARTE, EARLY and FORAY,
Appellate Military Judges.

DECISION UPON FURTHER REVIEW

FORAY, Judge:

Upon original review of the record of trial in this case, this Court set aside the action of the convening authority and returned the record of trial to The Judge Advocate General, United States Air Force, for referral to a different convening authority and staff judge advocate for a new review and action. *United States v. Cruz*, 54 C.M.R. 744, 2 M.J. 731 (A.F.C.M.R.1976). The new review and action having been accomplished, the case is once again before us for further review.

Appellate defense counsel submit five claims of error, one of which warrants our review. The remainder we find to be without merit. Counsel contend:

THE MILITARY JUDGE ERRONEOUSLY OVERRULED APPELLANT'S OBJECTIONS TO PROSECUTION EXHIBITS 6 AND 13, THE PRODUCTS OF A WARRANTLESS SEARCH OF APPELLANT'S AUTOMOBILE.

A recitation of the facts relevant to our inquiry into this claim of error follows.

In the evening of 2 March 1976, the accused and Airman First Class Teddy L. Monhollen met in the accused's automobile which was parked in the parking lot of a liquor store in Lompoc, California. Earlier that day the accused had agreed to meet with Monhollen at that location where the accused would sell Monhollen approximately fourteen ounces of marihuana.

Monhollen had been recruited by agents of the Office of Special Investigations (OSI) on 17 February 1976, to assist them in collecting evidence against the accused who they suspected was engaged in transactions involving the sale or transfer of dangerous drugs. Specifically, Monhollen was to make contact with the accused and purchase dangerous drugs from him with money supplied by the OSI. Monhollen, according to those instructions had made successful contact with the accused on three occasions prior to 2 March when he obtained dangerous drugs from him.

The 2 March meeting between the accused and Monhollen was likewise engineered by the OSI agents. At this meeting, it was planned that the accused was to be apprehended for his drug dealing activities. Monhollen was to meet with the accused and purchase marihuana from him as the two had earlier arranged. Monhollen was to make the purchase using funds provided him by the OSI. Upon completion of the transaction, Monhollen was to electronically signal the OSI agents. Six OSI agents and two officers from the Lompoc Police Department were nearby in the parking lot of the liquor store and, upon receipt of Monhollen's signal, were to close in on the accused's automobile and apprehend the accused.

When the signal was given, the police officers proceeded to the vehicle. Both occupants were ordered to dismount and were advised they were being taken into custody. The accused was then "frisked" and his hands cuffed behind his back.

Subsequently, one of the OSI agents present, Stephen F. Minger, proceeded to the accused's vehicle in order to secure the doors "so that if there were any valuables in the car, they wouldn't be removed." He first approached the door on the driver's side and opened it in order to engage the locking device. At that time he observed a quantity of folded currency on the driver's seat. He picked it up, determined the amount to be $180.00, and compared the serial numbers of three of the bills with a list of the serial numbers of the bills previously provided Monhollen to carry out the purchase of drugs. The numbers matched, so Minger seized the bills. At trial, the cash found in the accused's automobile represented the questioned "Prosecution Exhibit 13."

Next, Minger moved to the passenger side of the vehicle, opened the door to depress the locking stem, and observed a plastic bag containing vegetable matter on the floor in front of the passenger's seat. He seized the bag which was later scientifically analyzed as marihuana. At trial, the bag and contents represented the questioned "Prosecution Exhibit 6."

Minger testified at length at trial concerning his participation in the events prior to and subsequent to the accused's apprehension on 2 March. He insisted that what he had done regarding the accused's automobile was not a search, but was merely a procedure to secure the automobile and any valuables contained within. He testified that had he not found the money and the marihuana as he did, he would have "gone to the local police department and asked them to obtain a search warrant for the car."

To counter the appellant's contention that the "warrantless search" of his automobile denied him his Fourth Amendment rights, the Government urges three alternative bases to show that under the circumstances a search warrant was not required. The Government argues that any search conducted without a warrant was nonetheless reasonable as it would have been either a search incident to a lawful apprehension or a search to prevent the removal or destruction of goods believed on reasonable grounds to be criminal goods. Manual for Courts-Martial, 1969 (Rev.), paragraph 152. They also advanced the argument that no search was conducted at all, but the money and marihuana were instead seized under the "plain view" doctrine.

 Searches which are conducted without a warrant are *per se* unreasonable under the Fourth Amendment—except those searches conducted within a few specifically created and well defined exceptions. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Jeffers,* 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). The general standard to be applied in determining whether a warrantless search comports with Fourth Amendment rights is reasonableness. The Fourth Amendment does not prohibit all searches but only those that are unreasonable. *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); *United States v. Kazmierczak,* 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967). A search incident to a lawful apprehension may be made without a warrant. *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *United States v. Florence,* 1 U.S.C.M.A. 620, 5 C.M.R. 48 (1952); *United States v. Dutcher,* 7 U.S.C.M.A. 439, 22 C.M.R. 229 (1956). Likewise valid as a warrantless search is a search of an automobile based on a reasonable belief that it contains criminal goods and exigent circumstances are present. The exigent circumstances are those that present a risk that if a search is not then conducted, weapons, contraband, fruits of a crime, or evidence of a crime would be removed or destroyed. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Kinane,* 24 U.S.C.M.A. 120, 51 C.M.R. 310, 1 M.J. 309 (1976); *United States v. Brashears,* 45 C.M.R. 438 (A.C.M.R.1972).

 Under the "plain view" doctrine a police officer may seize items which inadvertently come into view while lawfully searching in connection with another crime, or who otherwise is lawfully where he is. The items thus seized may be retained and used as evidence in any prosecution. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Ker v. California,* supra; *Coolidge v. New Hampshire,* supra; *United States v. Burnside,* 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965).

We now examine the relevant facts concerning the issue we face in light of the foregoing principles to determine whether the Government's theories as to the admissibility of the questioned evidence are supportable.

 We are not convinced that the warrantless search of the accused's automobile was a search incident to an apprehension. Minger's entry into the vehicle occurred after the accused had been taken into custody and while he was outside the vehicle. Further, Minger's entry occurred after the accused's hands had been manacled behind

his back and while he was surrounded by the seven other police officers present at the scene. Assuming probable cause for the accused's apprehension existed, we do not find the inherent necessities of a search incident to an apprehension justified a search of the automobile. The situation at the time of the "search" of the vehicle was not necessary to prevent the accused's escape nor to prevent him from removing or destroying the evidence. Additionally, the search of the vehicle at the time was not a search of an area within the accused's immediate control whereby he could have obtained the evidence in order to remove or destroy it. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Preston,* supra; *Chambers v. Maroney,* supra. Accordingly, the admissibility of the questioned evidence may not be supported by this prong of the Government's argument.

Nor do we find the evidence obtained from the vehicle to be admissible under the theory there was a search of the vehicle based on probable cause and under exigent circumstances. At the time the automobile was immobile and its owner in the custody of the police. Further, there was no suspicion that there were confederates of the accused in the vicinity who could remove the vehicle and its contents. There were sufficient police officers in the locale of the vehicle to prevent it from being moved even if the accused had confederates. Assuming probable cause to be present, we, however, do not find the exigent circumstances necessary to justify any search without a warrant to prevent the questioned evidence from never being found. *Carroll v. United States; Brinegar v. United States; Chambers v. Maroney; Coolidge v. New Hampshire; United States v. Kinane*; all supra. Additional support for our conclusion may be found in Minger's testimony that had he not found the evidence as he did he would have sought assistance from the local police department to obtain a search warrant for the search of the vehicle. Accordingly, the admissibility of the evidence finds no support in this prong of the Government's argument.

We do find, however, that Prosecution Exhibits 6 and 13 were admissible as evidence under the theory that they were lawfully seized as items in plain view. Although Minger had reason to believe the money and marihuana involved in the earlier transaction between Monhollen and the accused were in the automobile, his sole purpose in opening two doors of the vehicle was to engage the locking device of each. He did not approach the vehicle with the intention of conducting a search and subsequent seizure of items of evidence. Once the door on the driver's side of the vehicle was opened to accomplish his stated purpose, the money was clearly in Minger's view. Likewise, when he approached the passenger's side of the vehicle and opened the door, the marihuana was clearly visible to him. Under the circumstances as these, where Minger was by the vehicle to accomplish a valid purpose, securing the automobile, it was reasonable for him to seize the two items of evidence which were in plain view. *Harris v. United States; Ker v. California; Coolidge v. New Hampshire; United States v. Burnside*; all supra.

Accordingly, we find the military judge did not err in overruling appellant's objections to Prosecution Exhibits 6 and 13.

The approved findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and EARLY, Senior Judge, concur.