**UNITED STATES**

v.

**Mark H. GILBERT, 252 06 3250, Lance Corporal (E–3) U. S. Marine Corps.**

**NCM 78 0948.**

U. S. Navy Court of Military Review.

Sentence Adjudged 8 March 1978.

Decided 19 Jan. 1979.

LT Vance J. Bettis, JAGC, USNR, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before DUNBAR, ROOT and MICHEL, JJ.

DUNBAR, Senior Judge:

Appellant was charged with and, contrary to his pleas, convicted of one specification each of wrongful possession of marijuana and wrongful possession of methamphetamine, in violation of Article 92, UCMJ, 10 U.S.C. § 892. The presiding military judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 4 months, forfeiture of $250.00 pay per month for 4 months, and reduction to E-1. The convening authority approved the sentence as adjudged, but suspended the bad-conduct discharge for a period of 12 months.

Appellant asserts that:

THE TRIAL JUDGE ERRONEOUSLY DENIED THE DEFENSE MOTION TO SUPPRESS PROSECUTION EXHIBITS 2 AND 3 AS THE SEIZURE OF THESE ITEMS FROM APPELLANT WAS IN VIOLATION OF THE FOURTH AMENDMENT TO THE CONSTITUTION.

Sergeant McGee, the individual who seized what was stipulated to be marijuana and methamphetamine from appellant on 3 November 1977, testified that on the day of the seizure, he was serving as Ordnance Maintenance Company duty noncommissioned officer. He was touring the squad bay of Barracks 105 aboard Marine Corps Base, Camp Lejeune, when he saw appellant and two other enlisted Marines sitting on a rack. He walked up behind these individuals "to see what they were doing." He observed a newspaper spread across appellant's lap, and on that newspaper he saw something "like a plastic bag with some kind of green substance in it." He stood there observing for several seconds before the three men behind whom he was standing discovered his presence. When appellant and the other two individuals discovered McGee standing behind them, appellant "crumbled everything up and tried to hide

it in his lap." Sergeant McGee noted that when he first saw the newspaper and plastic bag with the green substance in it, he did not suspect that any criminal activity was afoot. But when appellant "tried to conceal everything," he concluded "that something was wrong, something illegal" and at that point "it just clicked in [his] mind that the green stuff that was in the bag had to be or possible [sic] was marijuana." At this point, McGee testified he seized the plastic bag and its contents from appellant.

Appellant asserts that it is indisputable that Sergeant McGee's seizure of the contraband was not pursuant to freely given consent. He maintains that this leaves the necessity search, the search incident to a lawful apprehension and the "plain view" doctrine as the only possible viable theories supporting admissibility of the challenged contraband.

It is my opinion that the evidence seized falls clearly within the "plain view doctrine." I do not concur with the assertion that appellant's Fourth Amendment rights were violated, because after sighting the contraband, admittedly in plain view, McGee intruded into appellant's person, surely a protected area, to seize the contraband and this seizure was not supported by a warrant or by any exception to the warrant requirement. In *United States v. Rabinowitz*, 339 U.S. 56, 65–66, 70 S.Ct. 430, 435, 94 L.Ed. 653, 660 (1950), the Court said:

It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable searches.* . . . The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before

courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment.

Moreover, federal appellate courts have consistently held that police officers properly on private premises do not violate the Fourth Amendment if, without a warrant, they seize contraband or the fruits of a crime which are in plain view. *United States v. Burnside,* 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965).

In my opinion the facts of this case show that Sergeant McGee acted correctly in the performance of his duties. The circumstances surrounding the seizure show that he was lawfully on the premises, observed a substance within public view, and was justified in concluding that the substance was contraband. The Government came legally into possession of the bag of marijuana as the result of a plain view seizure.

I do not believe the circumstance that the package also contained another narcotic can be separated from the seizure as a whole to operate to the advantage of appellant. Sergeant McGee certainly was not obligated to obtain a scissors and separate that portion of the package containing the marijuana from the remaining portion. Nor having discovered additional illegal contraband was he obliged blithely to return it to the suspect. Indeed, had he done so, he would have undoubtedly been subject to criticism for dereliction in the performance of his duties.

Additionally, we do not detect any ambiguity, as alleged in appellant's brief, in the convening authority's suspension of the bad-conduct discharge. The convening authority approved the bad-conduct discharge on 6 April 1978. At the same time, he stated it was suspended for 12 months without any reference to the date it was adjudged. We infer, therefore, that the suspension runs from the date of his action.

Accordingly, the findings and sentence, as approved below, are affirmed.

ROOT, Judge (concurring):

I concur completely with the determination of Senior Judge Dunbar, but would add the observation that, upon the proper seizure of the package of marijuana, the contemporaneous seizure of the vial which contained a substance later proven to be methamphetamine was legal, even if the methamphetamine was unidentified at the time by Sergeant McGee. The circumstances surrounding this particular seizure would justify a prudent man in believing that an unidentified substance contained in a vial, at the same place and time, and obviously just having been received in the same package as the identified bag of marijuana, would probably also be contraband. With these facts, I do not believe that actual identification of the substance, which would probably have required the services of a trained chemist, is necessary. The cases cited by Judge Michel, in his dissent are, in my opinion, distinguishable. I think that Prosecution Exhibit 3 was legally admissible and that appellant is properly convicted of specification 2 of the charge.

MICHEL, Judge (dissenting):

I respectfully dissent.

While I agree that the marijuana was lawfully seized from appellant by Sergeant McGee, I am constrained to conclude that the substance methamphetamine was not.

Sergeant McGee, while functioning as his company's duty NCO, stumbled upon the casually seated grouping of appellant and two companions in a barracks squadbay. With his presence going unnoticed for several seconds, Sergeant McGee was able to observe a plastic bag on appellant's lap which appeared to contain green vegetable matter. During this period of observation Sergeant McGee's impression of the nature of this vegetable matter was essentially neutral; however, when appellant noticed the presence of Sergeant McGee and immediately attempted to "crumble everything up and . . . hide it in his lap," the sergeant concluded "that something was wrong, something illegal" and that "it just clicked in [his] mind that the green stuff

that was in the bag had to be or possible [sic] was marijuana." Immediately thereafter the sergeant seized the plastic bag and its contents. On appeal, as at trial, the lawfulness of this seizure [1] is attacked as a violation of appellant's protections under the Fourth Amendment.[2]

It is clear that the command of the Fourth Amendment is directed at two separate and distinct classes of unreasonable intrusion: searches and seizures. Both of these classes are protected in the case of service personnel in precisely the same manner as their civilian counterparts. *See United States v. Unrue*, 22 U.S.C.M.A. 466, 468, 47 C.M.R. 556, 558 (1973). The test of any alleged illegality of governmental intrusion is whether or not, under the circumstances, the action by government agents in effecting the search or seizure was in fact reasonable. *See United States v. Hartsook*, 15 U.S.C.M.A. 291, 35 C.M.R. 263 (1965); *United States v. Battista*, 14 U.S.C.M.A. 70, 33 C.M.R. 282 (1963). Therefore, any proper inquiry turns first to whether or not the search, if any, of appellant was lawful.

It is axiomatic that searches conducted by police and similar agents of the government are in fact reasonable if such searches are conducted in accordance with the directives of a lawfully issued search warrant predicated upon an untainted affidavit or like predicate specifying probable cause for the search. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). It is uncontroverted that, in the case *sub judice*, Sergeant McGee had no such warrant or like authority at or after he encountered

appellant and his cronies. Thus, an examination is required to reveal what, if any, exception to the warrant requirement exists which would bring Sergeant McGee's actions, immediately prior to the challenged seizure, within the pale of lawful enterprise. *See* paragraph 152, *Manual for Courts-Martial, United States, 1969* (Revised edition).

Perhaps it would be best to indicate initially what these actions patently were not. They were not of a nature as would have one conclude that appellant, confronted by the sergeant, gave his consent to what subsequently transpired. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Mayton*, 1 M.J. 171 (C.M.A.1975); *cf., United States v. Johnson*, 17 U.S.C.M.A. 514, 38 C.M.R. 312 (1968). They were neither carried out in open fields or woodlands, *see Hester v. United States*, 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924), nor undertaken incident to hot pursuit. *See Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Nor do I believe that Sergeant McGee came into possession of the contraband pursuant and incident to a lawful apprehension of appellant.[3] And, while I do not agree, conceptually, with the notion that necessity searches, to prevent the removal or disposal of criminal goods, are not applicable to persons and dwellings, *see United States v. Kinane*, 1 M.J. 309, 312 (C.M.A.1976), an application of that rule is unnecessary to any determination here for there yet exists one valid underlying basis

1. Seized from appellant at the same time as the marijuana was the substance subsequently analysed to be methamphetamine, a schedule II controlled substance as defined by section 202 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (84 Stat. 1236), as updated and republished within § 1308.12(d)(2), Title 21, Code of Federal Regulations, 1976, and stipulated to be such by all parties at trial.

2. U.S.Const. amend. IV. That venerable shield against lawless governmental intrusion upon private rights provides:

The right of the people to be secure in their persons, houses, papers, and effects against

unreasonable search and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

3. As will be seen from the facts, *see* note 4 *infra*, Sergeant McGee's authority and degree of control of appellant's person was, even in the former's own mind, far from being so complete as to deprive appellant of the ability and freedom to walk away. *Cf., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

for the lawfulness of Sergeant McGee's preparatory activity.

**4.** Sergeant McGee testified that on the occasion in question he was serving as Ordnance Maintenance Company duty noncommissioned officer and in that capacity he was touring the squadbay of Barracks 105 aboard Marine Corps Base, Camp Lejeune, when he saw appellant and two other enlisted Marines sitting on a "rack". He walked up behind these individuals "to see what they were doing". McGee, at this point, observed a newspaper spread across appellant's lap, and on that newspaper, McGee saw "like a plastic bag with some kind of green substance in it". McGee stood there observing for several seconds before the three men behind whom he was standing discovered his presence. When appellant and the other two individuals discovered McGee standing behind them, McGee testified appellant "crumbled everything up and tried to hide it in his lap". Sergeant McGee noted that when he first saw the newspaper and plastic bag with the green substance in it, he did not suspect that any criminal activity was afoot, but when upon discovering McGee's presence in his midst, appellant "tried to conceal everything," McGee concluded "that something was wrong, something illegal" and at that point "it just clicked in [his] mind that the green stuff that was in the bag had to be or possible [sic] was marijuana" McGee also testified that he knew what marijuana looked like as he had seen marijuana on occasions prior to 3 November 1977. At this point, McGee testified, he seized the plastic bag and its contents from appellant. During cross-examination, McGee was questioned about how he went about seizing the bag containing what he suspected to be marijuana as follows:

Q: Okay, you say you seized the box from Lance Corporal GILBERT, would you go into the circumstances surrounding the seizure of the box?

A: Well, it wasn't the box, sir, it was the newspaper.

Q: Oh well, then the newspaper?

A: Well, after he tried to conceal it I walked around to the front of the rack so I could face him. The first thing I said was what do you have. Then he started going into please, Sarge, let me flush it down the commode. I'm about to be promoted to Corporal, please let me get away, I'll take it out of the building as long as you don't say anything. I had my A. duty try and call the OD.

MJ: Wait just a minute. You asked Lance Corporal GILBERT what do you have?

WIT: Yes, sir.

MJ: Did you give him an Article 31 warning at this time?

WIT: No, sir.

MJ: I'm not going to consider the statement made, "Please let me flush it down the toilet," that being a statement made after a 31 warning should have been given.

Factually,[4] Sergeant McGee's actions come within the purview of the "plain

Individual military counsel resumed examination:

Q: Continue.

A: Yes, sir. I had my A–duty try to find the Company Gunny but he had already left the building; he had been there previously. Then I had him try to call the OD, the line was busy; he tried a couple of times, but the lines were busy. So he came back to me and he told me the line was busy and in the meantime Lance Corporal GILBERT said, "Okay I'll give you the package" and he gave it to me, sir.

Q: Did you in any way threaten Lance Corporal GILBERT?

TC: Your honor, we object to this as to relevancy.

MJ: Overruled.

WIT: I'm not sure if I did or not, sir, I know I tried to use quite a bit of tact on him to get the package away. At first everybody in the building was coming and telling him to run, to get out of the building and everything. So I may have, sir, but I can't swear to that.

Q: Weren't you trying to scare him in some way to give you the package?

A: Yes, sir, when I first started, when I asked him what he had and he went into his plea, I said, give it to me so I can get the OD up here. (sic) Everybody was saying to run with it, not to give it to me. So then I tried to scare him, more or less, so he would give it to me so he wouldn't run and so he wouldn't try to get out of the building.

Q: How did you try and scare him?

A: Well, sir, I was telling him that if the Battalion OD comes up here he would probably lock him up that night or take him down to the OD shack and make him stay down there.

Q: Did you in fact say to Lance Corporal GILBERT that you would get it from him one way or another?

A: I may have, yes, sir.

Q: Did you in fact say, "Lance Corporal GILBERT if you don't give me the package, I'm going to bust your head?"

A: I don't really know, sir, I may have but I don't really know, sir.

Q: You don't know, and you don't remember?

A: I don't really remember, sir.

Q: Did you scare him into giving you the package?

TC: Your Honor, objection relevancy.

MJ: Overruled, proceed.

WIT: I must have, sir, because at first he was real reluctant to give it to me and then he just said okay, and handed it to me.

Q: Did you also state to him in trying to get the package from him that nothing would become of the incident if you gave me (sic) the package?

view" doctrine.[5] "Positioned in a place where he ha[d] a right to be," Sergeant McGee was "entitled to use his regular senses and to take cognizance of information gleaned from such use." *United States v. Hessler*, 4 M.J. 303, 304 (C.M.A.1978). Here, the sergeant was making duty rounds which took him into the open squadbay. While his initial interest, if not his suspicion, was aroused by the group of which appellant was a member, such interest was quickly crystalized into a perception of wrongdoing once his presence was ascertained and appellant attempted to take evasive measures to preclude further exposure of the prohibited items to the gaze of the sergeant. However, the cat was already out of the bag and the furtive efforts of appellant were ineffectual as to getting it back in again.[6] The sergeant testified that this event precipitated an awareness on his part that something unlawful was afoot. Armed with his previous knowledge of the apparent true nature of the "green vegetable matter," Sergeant McGee at that moment had probable cause to believe that he was witnessing criminal activity and thus, could have apprehended appellant on the spot had he the presence of mind to do so. *See Hessler, supra,* at 306. Considering the totality of the circumstances presented here, it is immaterial that he did not. *Id.* at 307. In that the substance ultimately shown to be marijuana was in plain view and Sergeant McGee had probable cause to believe that it was in fact marijuana, his seizure of the substance was altogether proper. *See United States v. Schultz,* 19 U.S.C.M.A. 311, 41 C.M.R. 311 (1970).

However, the marijuana was not the only substance seized at that time. The substance stipulated at trial to be methamphetamine formed the basis for appellant's conviction as to the second specification of the

A: I have no idea if I said that or not, sir. I don't believe I did because I have busted a lot of people before and I know that I can't make a statement like that because I have nothing to do with it once I take it away from him.

Q: Did you also state that you could search anyone or anything in the barracks because you were the duty NCO?

A: I don't believe I did, sir, I think I made a statement of saying, if I suspect anybody of having anything I can look and see what it is.

\* \* \* \* \* \*

Q: Do you *still* deny making any type of threat to obtain the package from Lance Corporal GILBERT?

A: No, sir, I won't deny, but I don't remember really, sir. Everything happened there so fast I was talking to him and I was trying to get the Battalion OD on the phone at the same time through my A duty. I may have, sir, but that's—I don't even remember writing down anything saying that I did, sir.

Q: Did you say something to the effect that, "If I make a bust it will be some brownee (sic) points towards promotion to staff sergeant?"

A: No, sir, and that has nothing to do with getting promoted to staff sergeant, sir.

Q: Did you say that, "I have a right to search any part or person in the barracks because I'm duty NCO?"

A: I may have, yes sir, but I won't swear to that, sir, I may have said that . . . (R. 87–89; 100).

The two individuals who were seated on the "rack" with appellant at the time Sergeant McGee came upon them and confronted appellant testified for the defense. Both men testified that only after McGee had threatened several times to "ring [appellant's] neck" if he did not hand over the plastic bag and its contents did appellant surrender the same to McGee.

5. This doctrine, the most authoritative pronouncement of which is to be found in the plurality opinion of Mr. Justice Stewart in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), is followed in the military. *See, e. g., United States v. Hessler*, 4 M.J. 303, 304 (C.M.A.1978); *United States v. Schultz*, 19 U.S.C.M.A. 311, 41 C.M.R. 311 (1970); *United States v. Decker*, 16 U.S.C. M.A. 397, 37 C.M.R. 17 (1966); *United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965); *United States v. Bolling*, 10 U.S.C.M.A. 82, 27 C.M.R. 156 (1958); *United States v. Doyle*, 1 U.S.C.M.A. 545, 4 C.M.R. 137 (1952); *United States v. Garcia*, 3 M.J. 1090 (N.C.M.R. 1977); *United States v. Cruz*, 3 M.J. 707 (A.F.C. M.R.1977); *United States v. Reynolds*, 1 M.J. 823 (A.F.C.M.R.1976); *United States v. Hernandez-Florez*, 50 C.M.R. 243 (A.C.M.R.1975); *United States v. Whitehead*, 48 C.M.R. 344 (N.C.M.R.1973).

6. The metaphor was first applied in a criminal law context by Mr. Justice Jackson in *United States v. Bayer*, 331 U.S. 532, 540, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

charge against him. With respect to this substance there is no evidence of record which would indicate that Sergeant McGee previously ever had seen methamphetamine in any form.[7] Consequently, it can not be asserted with any degree of vigor that he had probable cause to seize this material, for not every illegal act necessarily gives rise to another. *Cf., United States v. Decker*, 16 U.S.C.M.A. 397, 37 C.M.R. 17 (1966). And, much as a search and a seizure are separate acts, each being required to satisfy the constitutional mandate of reasonableness prior to the receipt into evidence at a criminal trial of the fruits of the combined activity, *see United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965), so too must each seizure be judged against its own individual predicate in terms of that lawfulness which will make the evidence thereby obtained legally admissible at trial.

Here, the methamphetamine was seized contemporaneously with the marijuana. Undeniably then, if there was probable cause to seize the methamphetamine its receipt into evidence at appellant's trial was properly allowed by the military judge. However, on the record before us I am constrained to conclude that at the time Sergeant McGee seized the vial he lacked probable cause to believe that it contained a prohibited substance of any description or nomenclature. Thus, this seizure was undoubtedly predicated upon mere suspicion. This being so, the seizure of this second substance was unlawful and the military judge erred in allowing the evidence to be admitted against appellant. *Compare United States v. Thomas*, 16 U.S.C.M.A. 306, 36 C.M.R. 462 (1966), *with United States v. Smeal*, 23 U.S.C.M.A. 347, 49 C.M.R. 751 (1975); *See State v. Hoggans*, 35 Or.App. 669, 582 P.2d 466 (1978); *State v. Shinault*, 584 P.2d 1204 (Ariz.App.1978). In that this is the sole evidence against appellant under specification 2 of the charge, the finding of guilty as to that specification should be set aside. *United States v. Brown*, 10 U.S.C.

M.A. 482, 28 C.M.R. 48 (1959). As I would not indulge in speculation concerning the impact of this significant fallacious finding on the sentencing entity, the sentence, likewise, should be set aside and a rehearing authorized. *See United States v. Dukes*, 5 M.J. 71 (C.M.A.1978); *United States v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970).

Accordingly, I would return the record to the Judge Advocate General for further proceedings not inconsistent with this opinion. Such action would effectively moot appellant's present contention that ambiguity exists concerning the commencement date of the suspension of the adjudged bad-conduct discharge.

---

**7.** The stipulated evidence was that the clear plastic vial containing a tan powder-like substance in fact contained 0.53 grams of methamphetamine. There is no evidence of record which would remotely suggest, as does the majority herein, that the marijuana and the vial containing the methamphetamine were both contained in the same plastic bag.